Good morning. May it please the Court. My name is Randy Haar and I represent the appellant and plaintiff Wanda Sell. I think the focal point of the appeal is the language, invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies. That's the personal injury clause, right? That's correct, Your Honor. That's the primary issue in the case. I believe that the genesis of that language started in insurance law with a version that omits the last clause that says that a person occupies. And we know from existing case law that that version of this language has been found on numerous occasions, for example, by Martin Marietta and Fragamino, to be ambiguous because it is susceptible to various interpretations. But we're dealing with a new language. That's right. And my next point, Judge, is that now we add the phrase, quote, that a person occupies, end quote, which does nothing to remedy the ambiguity that existed before that language was added. In fact, I think it compounds the poorly worded language in that if you look at the initial version without that language, it's clear that Ms. Sell would have had coverage because it addresses the right of private occupation. It's clear that Mr. Osegueda, the petitioner in the underlying case, was seeking the right of private occupation. His petition articulates his desire to have and occupy the ranch and to live on it as his residence. So when you say occupied ranch, who occupied it? Mr. Osegueda wants to occupy and live in it. Now, the problem is, is we don't know. He didn't occupy it. We don't know that until his deposition. And it turns out he doesn't occupy it. It turns out he doesn't occupy it. Okay. So he doesn't meet the definition that a person occupies. I don't think that he – that's what that clause is intended, first of all. And second, I think because of the inherent ambiguity of the phrase in its entirety, that it has to be construed to benefit Ms. Sell. If you listen to – I'm going to cut to the chase here. Let's try the first part of it. Sure. Was there an eviction? No. Was there a wrongful entry? That is a good question. I don't think I can say yes or no to that. And how about invasion? I'm sorry? How about invasion? There is an invasion. There's a physical invasion by Wanda Sell because she has a trailer on the property and she has a watchman, and she visits the property regularly from her home in Redding. So we have a physical invasion. We have the property. I might note it's 87 acres. It's a farm. We don't know that Mr. Osegueda, given his relationship with the decedent, stored equipment on the farm, farmed it, or had any other relationship with the property. We do know that he didn't live in the house. Now, getting back to the defendant's position in this case, there is this Court to say that the words that a person occupies should be defined by other irrelevant language in the policy, unoccupancy or unoccupied. If the Court scrutinizes that language, the Court can see that it pertains to a dwelling. This property has more than a dwelling. The dwelling, to the best knowledge nationwide, is uninhabitable based on Mr. Greco's letter. So we don't know at this point in time whether Mr. Osegueda has an old nine-in farm tractor out there, whether he's raised an asparagus or whatever. Do we know that he does or doesn't or nothing? We don't know. Okay. Well, so why should we infer that he does? Because, now we get into the duty to defend, because it hasn't been ruled out. A simple phone call to Mr. Osegueda or his attorney and ask the question. It hasn't been ruled out that the son won't come up tomorrow either, but that's not necessarily a logical inference. Okay. But we're getting, I think we need to focus on the argument of whether this is an ambiguous clause, regardless of occupancy. And my, I would submit to this Court that if you took the position urged by nationwide, you could simply read their language as say, invasion of the private occupancy of a room or dwelling or premises that a person occupies. That has the exact same meaning as urged by the defendant. And what I've done is I've taken out two key words, right of. So what the appellee is asking this Court to do is to completely do what it urges it not to, and that is to disregard language that's in the policy. Now, again, we know that this language starts out as being ambiguous. Well, I confess, I don't understand what you just said. Okay. What is it that is being read out of the policy? The words right of. If you accept nationwide's position, the language would read, invasion of the private occupancy of a room, dwelling, or premises that a person occupies. That's their position on what that language means. My position is, what happened to the words right of? And we know that a right of occupancy, as set forth in many of the cases cited, I think Rancho Murrieta, is distinct from occupancy. And that's a point that's made in their brief. So you're saying the inclusion of the words right of mean we should draw a line through that a person occupies? If you're going to accept nationwide's version, that's what they mean. And my argument is, is that you can't take that language either because it has meaning. And we know that by rules of construction, we have to give those words right of some type of meaning. So in other words, your construction is that because that phrase is there, the right of, necessarily the phrase that a person occupies is wider than physical occupancy because it includes a right to occupancy? Well, I think it contradicts it in a sense that nationwide is urging. It makes it ambiguous. Right. It's already ambiguous. It's now more ambiguous because we added that last clause, a person occupies. I would suggest to the Court that the language that a person occupies defines the class of claimant. In other words, and if you look at the rudder group on this issue. Just a minute now. In this case, who's the claimant? Is it the plaintiff? I mean, the plaintiff on the underlying action? Yeah, the petitioner. Aceguedo? Correct. A natural person. He's the claimant. Correct. All right. Go ahead. So a person occupies defines the class of claimants to be a natural person. And if you look at the rudder group treatise on insurance litigation, I think it's section one. I'm sorry, 7 colon 1023. Rudder group makes that distinction. They say that person means a natural person, not a corporation or other fictional entity. What section would you just refer to? 7 colon, and this is my poor memory, 1023, I believe. Somewhere around there. Let me offer the Court more clarity because I happen to have it right here. All right. That's fine. I'm sorry. It's 10, I'm sorry, 7 colon 1073. 73, all right. It talks about a person. Suppose somebody sued your client for her failure to convey the property pursuant to a sales agreement, specific performance. Would that be covered by this policy? No. How is this really any different? That illustration that the Court mentioned, Judge Clifton, is a non-invasive invasion. Well, I look at the petition filed by the claimant here. He's seeking possession of the property. He doesn't claim current occupancy of the property. We've seen no evidence that he has current occupancy. So how is it really different? The argument is that your client hasn't satisfied the conditions of the trust, so he should have the property passed to him. Well, he is asking the Court to take the property from someone in occupancy and give it to him who wants to be in it. So it's an action for specific performance of a sales contract. No. I think in this case he has actually a property right. And the distinction in the cases that the Court's reference to, those cases are held, or the determination in those cases is based on the non-invasive nature of the, quote, invasion. In other words, there's cases like the City of Goshen, and there's other similar cases, the Sterling Builders case and things of that nature, that talk about this non-invasive conduct. I think there are easement cases and things of that nature. In this case, we have a woman who is in possession of the property, and Mr. Osagreda wants that possession. And he has he's claiming, he's alleging that he has a property right in that he's entitled to that property, and he wants her dispossessed. And how is that different from the sales contract case? Because she's in possession, and she's infringing upon his right, and she's denied him access. And that's what's being argued here. She's in possession, and he wants possession because he argues she hasn't satisfied the condition. Well, I don't know. I think that the sales contract case is a breach of contract cases, and I think a lot of those holdings. It strikes me as a trust case. I mean, in the big picture, the policy that we're supposed to be guided here by the mutual intentions of the parties or reasonable expectation of the insurer. I have trouble understanding how a farm owner policy is supposed to cover whether your client satisfied the conditions of the trust that gave her right to the property in the first place. Well, I think it's a broader question. I think the question is whether she dispossessed him, you know, invaded his interest in that property. Well, her invasion, I mean, he is not asserting a current possession of the property, and there's been no evidence that he has been ejected in any fashion. He's saying it's supposed to come to me because she hasn't lived up to the trust. It seems to me it's kind of a stretch to say that he's been evicted. No indication he's possessed the property ever. No. I think that the distinction has to be made between eviction, eviction, entry, and other invasion. And other invasion includes a right to occupancy. And what on its face the petition seeks is his right to occupancy. That's the plain language of the policy. Uh-huh. But that doesn't mean that because he hasn't been granted a right of occupancy there's been an invasion or a wrongful entry or an eviction. His occupancy hasn't commenced yet. Your Honor, we're not claiming that there's been a wrongful entry or a wrongful eviction. What do we have then? What's left? We have an invasion of his right to occupy, and that's exactly what the policy language says. But invasion suggests entry into something that somebody else already has, not putting up a fence and not letting the person own the property in the first instance. I think he already has as the parliament judge. If the policy said invasion of private occupancy, I'd be inclined to agree with you. Well, but in the context you're arguing, Mr. Hart, you're equating invasion with denial. He's just been denied his right to occupancy, right? He's been prevented, yes, by her physical presence on the property. I mean, that's what you're saying is that's at least a permissible, permissible interpretation of invasion to include the denial of the right to occupy. I think it's more than just denial. She's on a panel. There's a face-to-face meeting in December or September, the year before the petition is filed, and she says, I'm going to occupy it and I'm not letting you own it, according to one allegation in the petition. Then there's another allegation in the petition that he demands it and wants to occupy the property. In the meantime, what Nationwide knows is, based on Mr. Greco's letter, is that Wanda Purcell has a trailer on the property and a watchman. Now, what's the watchman there for? He's there to keep the people off the property. Well, no. She's asserting her right to occupancy. Right. She's occupying it. She has physical possession, occupancy of the property, and he wants it, and he's claiming that he has the right of occupancy. That's – I mean, it can't be clear in this petition, and it can't be clear in the policy language. Well, it could be a lot clearer in the policy language. I'm having trouble seeing your argument. Well, the policy language is the problem to begin with. And if this Court were inclined to say this policy language is so ambiguous that it's time – in this case, that ambiguity has to be construed in favor of my client, then maybe the discernment would wake up in physics. Only if your client's claim fits. And I'm having trouble seeing how invasion is an apt description of what your client is dealing with here. But she's on the property. Uh-huh. And so she's invaded the property she's on to begin with? She's invaded his right to occupancy. She's denied it? Right. But she's there. It's not like she's on the phone saying she's in Alaska and he's in Southern California and the property is in Stockton. Okay. She's out there, and she's got a watchman, and she says, you're not coming on. Okay. You're down to a minute. Do you want to save it for rebuttal? Yes, I will. Thank you. Before you sit down, I've got to ask you a question. We'll still give you the minute. This is not on the merits, but I have to ask you this. I thought I knew where most lawyers are from in California, but I never heard of MacArthur. Can you tell me where it is? It's the Fall River Valley, which is 80 miles east of Redding. Eighty miles east of Redding? It's a farm country. That's really out in the... Population 500. Thank you. You're welcome. Thank you. MacArthur, you shall return. Good morning, Your Honors. May it please the Court. I'm Michelle Carter, appearing on behalf of Nationwide Insurance Company. We have not understood this case since it was filed. There is absolutely no ambiguity whatsoever in the definition of personal and advertising injury, and I'm going to read that definition into the record, because it is the key issue in this case. Personal and advertising injury means injury including consequential bodily injury arising out of one or more of the following offenses. You're not really going to read the whole thing to us, are you? We've got it in front of us. One sentence. Okay. One sentence. One sentence. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupation of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor. There is no ambiguity in that definition whatsoever. As the authority in our brief... How about the words right of? The words right of have to be construed in light of the words that a person occupies. So what this policy provides is that there is protection when a policyholder is sued in a claim involving somebody asserting both the right of occupancy and that the person occupies the property currently. So... Well, isn't there a case from some other jurisdiction that construes this differently than you're arguing now? I am not aware of that case. In other words, that right of occupancy is broader than the actual physical occupation. That is absolutely true. The problem, though, is that what this definition does is it adds the words that a person occupies. So what the definition requires is both.  Well, wait a minute. Now, that's not a reasonable construction because that means, you know, including in that definition the phrase the right to occupation is meaningless because you have to occupy it. Having a right doesn't add anything to it, so it's a meaningless phrase. It's surplus, isn't it? No. Actually, if the Court were to construe it as Your Honor has suggested, then the words that a person occupies would be surplus. What the two cases that best exemplify this, although the facts are slightly different, are the Zelda case and the Cunningham case. And in the Zelda case, that was a case involving a patron that was thrown out of a bar, and the Court focused on the fact that the patron, while the patron was occupying the premises, did not have any property right, could not assert a right in that property. And then the Cunningham case, which was the case that involved the auto dealership where the dealer was occupying the back portion of the premises, and the Court held in that case, because there was a prospective right that was under a lease but not actual possession of the premises, that there was not coverage. And that also involved similar policy language. But what the Court expressly stated and made clear is that after 1985, the definitions within the personal and advertising injury language started to change, and the insurers became much more clear in defining exactly what it would take to establish the personal and advertising injury. And it requires both the right of occupancy and the fact that there be an eviction of somebody who actually is on the property. And Nationwide's policy is even more clear than other of the policies that are at issue in some of the cases discussed in the briefing, because it makes it very clear that you have to have both the right of occupancy coupled with a person occupying the property. And nothing else. That means you have somebody occupying the property who doesn't assert a right to occupy, that is, a wrongful occupation. That eviction of somebody who wrongfully claims occupancy is not covered by the policy? Is that the piece that you're looking at? Well, that would be Zelda. There has to be an end. With respect to the definition in the policy, you have to have the wrongful eviction, which implies that the person has the right to be on the property. And either that or the wrongful entry into or the invasion of the right of private occupation. So you do have to have the right to be occupying the premises. But in addition to that, they actually have to be occupying the premises. And what we have alleged in the petition, and none of the extraneous or extrinsic facts showed otherwise, is absolutely no allegation whatsoever Mr. Osegueda was ever occupying the property. And that is what the district court found to be the critical factual contention that was missing that made this a case involving no potential for coverage whatsoever. You're saying Zelda has spoken to this issue directly? No, the facts in Zelda were different. That involved a patient. So there really isn't any California court that have spoken to this issue directly? Not this exact issue. Because basically the critical issue here, and I'm sorry if I'm going to rehash it, but I want to make sure I understand it, is whether the words that a person occupies means that Nationwide has to defend Michelle in cases where she is being sued for interfering with the property rights of someone who is presently occupying the relevant property. Yes, Your Honor. All right. So does Osegueda need to assert an interference with his rights to the ranch and also assert that he actually occupies the ranch in order for Nationwide to defend Michelle or? That is exactly our position. That's your position. It's not your position is that he just needs to assert interference with his rights to the ranch. That's not enough. That is not sufficient under the language. And you're saying that's clear under the language. That is clear. Because again the language adds the clause that a person occupies. It can't be any clearer. That a person occupies. That is a present tense state of occupancy. That qualifying language changes everything. It is not simply the fact Mr. Osegueda asserts a right to occupancy. It is the fact he must not only assert the right to occupancy and possession. He must currently at the time be possessing or occupying the property. And the words of the right of doesn't make this a little bit more ambiguous. No. Because there has to be both. If you take away that a person occupies, I agree 100 percent there would be an ambiguity because that would make this policy similar to the pre-1985 policies where the California Courts of Appeal were anguishing over the ambiguity of the policy. But by adding the language that a person occupies, Nationwide has made it very clear that there must be a present tense or a present state of occupancy. And even with the language that doesn't involve that a person occupies, the courts are suggesting, for instance, in Cunningham, that that's not even required. But Nationwide took it one step further and made it even clearer than the policy language at issue in Cunningham where the court found that there was no duty to defend. Counsel has not addressed, does the court have any further questions on that issue? I'm sorry. Go ahead. So Mr. Osegueda did not have lawful title to the property at the time he filed the suit or did he? He was claiming it, but it was being disputed. So the trust had provisions in it that he claimed were applicable such that he would be entitled to possession, but he wasn't currently possessing it. And the appellant in this case, Ms. Sowell, was disputing that in the underlying case. But nothing in the petition indicates that there was ever a wrongful eviction of Mr. Osegueda. Nothing indicates in the petition. He was ever removed from the property. And nothing in the extrinsic facts that were provided by Ms. Sowell's attorney suggested otherwise. Nothing that was disclosed during any communications between the attorney for Ms. Sowell and the carrier ever disclosed any suggestion there was occupancy. I just have one more question. I guess, doesn't it seem a little arbitrary to limit insurance coverage to only those lawsuits or suits where the insurer interferes with the third party's right to the property before the third party moves in? Well, it's pretty well settled that insurance companies have the right to describe and limit the scope of coverage as they place. And as long as the provisions, and this is not an exclusion, so that conspicuous plan, clear doctrine does not apply to this. But as long as there is not an ambiguity that would allow the court to then look to the reasonable expectations of the insurer, we don't get into that question. Are you familiar with this Hobbs Realty case out of North or South Carolina? No, Your Honor. Where the court held that this very language was ambiguous in a situation where a person was asserting the right to occupy but didn't have occupation. This is, you know, a renting a vacation home or something like that where in South Carolina where the owner later on found it was a biracial mixed couple. And when the black person came, he wouldn't give him the key. So he never had occupation, but he asserted a right to occupy. And the court said it was a court of appeals of North Carolina. The language is ambiguous. No, I'm not aware of that decision, Your Honor. But I am aware of a Kansas decision that was cited in our briefing in the underlying case that came to the exact opposite conclusion. And what I would submit. Does that mean then if two appellate courts come to different conclusions that the language must be ambiguous? No, it does not. We're talking about two out-of-state cases. And what Nationwide is talking about here is California law, which requires the insurance policy to be interpreted in totality with each clause giving meaning to the other. We're applying California law here. And this comes down to basic rules of insurance policy interpretation. And under California law, there is no reasonable way to read this provision and come to the conclusion that it is ambiguous. The appellant did not address the issue of the, whether this was an intentional act or an accident. That was a lead argument in the brief. This issue was briefed fairly thoroughly in our Respondent's brief. But it's fairly clear that because Ms. Sell intentionally engaged in acts to preclude Mr. Osegueda from possessing the property, it is an intentional act. There is no accident. And also, counsel did not address the breach of covenant arguments, which the court dismissed in the first summary judgment motion. We have argued that the argument, that the ability to argue that has been waived because counsel did not make any arguments in the opening brief. That put us behind the eight ball, obviously, because when we tried to anticipate what their arguments might be in our Respondent's brief, we focused on the genuine dispute doctrine and the reasonableness of the claim decision. And then in Respondent's, I'm sorry, in the Appellant's reply brief, they came back and argued there was a failure to investigate. We weren't able to anticipate that that was going to be an argument. And we would submit that there was not a failure to investigate because all of the information available to Nationwide at the time of the tender was within the four corners of the petition. No evidence, Mr. Osegueda occupied the property. There was no extrinsic evidence provided that would have created any sort of doubt in Nationwide's mind that would create a duty to defend. Nothing was supplied later down the road indicating that there was going to be any possibility of a duty to defend. And ultimately, it was demonstrated in discovery that Mr. Osegueda never did occupy the property. I think that the facts are pretty clear. This was a reasonable claim decision and well supported by the authority. Also, the Appellant has not raised the punitive damages ruling. We believe that also has been waived. Does the Court have any further questions? No. Apparently not. Thank you very much. We thank you for your argument. I return. Come back. Real briefly on the issue of the waiver, I could have been more articulate in that, but I did raise two and a half pages of comments from my expert witness, Clinton Miller, concerning the factual background section. Right. You're supposed to infer from that you're making an argument? Right. And I suffer from the misapprehension that had the Court reversed or found coverage, that everything would be back on the table. But I would make this observation. Mr. Miller's comments and testimony are germane to exactly the issues of bad faith and the covenant of good faith and fair dealing. The issues were briefed. And I think what I said in my reply brief reiterated what was in the opening brief. With respect to occupancy, let me leave the Court with this question. As I stand here today, am I occupying my home in MacArthur, or am I occupying my motel room, or am I occupying this space? Obviously, the term occupancy is a very nebulous concept in the law. And I think that the addition of the language that Nationwide added to its policy did nothing to clarify the preexisting ambiguity. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted. That concludes the argument calendar for this morning. We're adjourned.
judges: Tashima, Clifton, Murguia